ERVIN, Justice.
This is a conflict certiorari review of a per curiam decision, 238 So.2d 700, without written opinion of the District Court of Appeal, Second District, affirming the trial judge’s order granting defendants’ (Respondents’) motion for a directed verdict and judgment notwithstanding the verdict in this case.
The trial judge’s record order sets forth the factual situation of the case, as well as the basis for his judgment n. o. v. sufficient to inform as to the nature of the case and its disposition and to give us jurisdiction to review the case by cer-tiorari. The order reads as follows:
“This is a suit by the Plaintiff for personal injuries sustained in a collision between an automobile being operated by the Plaintiff and a railroad locomotive owned by the Seaboard Coast Line Railroad and being operated by W. H. Forrester.
*210 “Defendants moved for a directed verdict at the close of the Plaintiff’s evidence and on recommendation of the Court and by stipulation of counsel it was agreed that although the formal motion would at that time be noted, the argument on the motion would take place at the conclusion of all of the evidence. At the conclusion of all of the evidence, the Defendants renewed and again made their motion for directed verdict. After argument by Defendants, for both the convenience of the Court and the Plaintiff, the Plaintiff’s argument was reserved until after the jury had retired and returned with a verdict the Court specifically reserving its ruling until such time. The jury returned with a verdict of $30,000 for the Plaintiff, and thereafter the Court entertained argument by counsel for the Plaintiff in opposition to the Defendants’ motion. * * *
“The following are the undisputed facts. The accident occurred at the grade crossing of Himes Avenue and the tracks of the Seaboard Coast Line Railroad Company in Tampa, Hills-borough County, Florida. The Plaintiff was operating his 1961 Studebaker Sedan in a northerly direction on Himes Avenue, a two (2) way street approximately forty-five (45) feet in width; the Plaintiff was operating in the proper lane of travel for north bound traffic. The railroad track intersects the said Himes Avenue at an angle whereby tracks run southwesterly and northeasterly. The angle at which the tracks intersect the street is 152°. The Defendant’s train, consisting of an engine, sixty five (65) loaded cars and a caboose, was travelling in a southwesterly direction on the said tracks at the time of the accident. The accident occurred at approximately 1:30 p. m. on a clear day with no impairment to visibility. The railroad’s right of way on the southerly side of the said tracks is 100 feet in width and is clear so there are no obstructions to view. South of the said [sic] 221 feet there are trees, shrubs and bushes which constitute an obstruction to view. Based upon the unimpeached physical measurements, there are no obstructions to the view of a motorist approaching the tracks from the south for a distance of 221 feet south of the southerly edge of the railroad tracks.
“The Plaintiff was familiar with the crossing having gone over the crossing some ten or fifteen times within the six months preceding the accident. In addition, the Plaintiff had gone over the crossing just a few hours before the accident and on the same day as the accident. The speed limit for vehicular traffic on Himes Avenue is posted at 35 miles per hour. The speed of the Plaintiff by his own admission was between 40 and 50 mph. The Plaintiff testified that when he reached that point on Himes Avenue where the view was no longer obstructed, he saw the train and thereafter applied the brakes to his vehicle. His vehicle skidded leaving 107 feet of skid marks; the front of the vehicle collided with the left front of the engine of the train. The Plaintiff testified that he did not hear the whistle of the train before he observed the train.
“There is conflict in the testimony as to whether the train sounded its whistle or horn on the approach to this crossing and there is further conflict in the testimony as to the speed of the train. However, this Court takes the position that the jury could have found negligence on the part of the railroad and is assuming such negligence for the purpose of this Order and Judgment.
“The Court is fully cognizant of the law that questions of fact must be decided by a jury and may not be taken from the jury or re-examined by the Court. On the other hand, the question as to whether or not there is suffi *211 cient evidence to raise a question of fact to be presented to the jury is a question of law and must be decided by the Court. The Court is of the opinion that the undisputed facts in this case would establish that the Plaintiff was guilty of contributory negligence as a matter of law.
“In Florida East Coast Ry. Co. v. Townsend, 1932, [104 Fla. 362] 140 So. 196, 198, the Supreme Court of Florida stated:
“Under the laws of Florida, where a person attempts to drive an automobile over a railway crossing with which he is familiar, when his view of the railroad track is so obstructed that an approaching train cannot be seen, and he does not stop and look and listen or take such precautions for his safety as are reasonably required by the existing conditions and circumstances, he is negligent so as to prevent recovery of damages from the railroad company for his injury or death, by being struck by the train, * * * ’
“Later in the same decision it is stated:
“ ‘As the Plaintiff was familiar with the crossing, he should have known of the obstruction to the view of an approaching train and he was negligent in not taking reasonable precaution at a safe distance from the track, to ascertain whether a train was approaching before driving the sedan upon the railroad track.’
“This same principle was recognized again by the Supreme Court of Florida in Lofton [Loftin] v. Kubica, 67 [68] So.2d 390, 392:
“ ‘The appellee testified that he knew the crossing was there, and with that knowledge a positive duty rested upon him to take some care for his own safety. He should have slowed down or come to a stop.’
“The case of Atlantic Coast Line Railroad Company v. Ponds, Fla.App.1963, 156 So.2d 781, has facts surprisingly similar to the present case. In that case the obstruction was about 250 feet from the crossing and, once he got beyond the obstruction, the driver of the vehicle was aware of the approaching train. He then applied his brakes, but apparently misjudged their efficiency, and did not bring the vehicle to a stop before he reached the tracks. The Plaintiff was the widow of a passenger in the motor vehicle and in order to prevent a recovery, the railroad had to show in that case that the negligence of the driver was the sole proximate cause of the accident. The Court found that the driver of the motor vehicle was negligent as a matter of law and stated that:
‘* * * a driver, approaching a railroad crossing, is under a duty to have his car under control so as to avert collision if possible.’
“Also cited in that decision is Chassereau v. Powell, 1934, [116 Fla. 586] 156 So. 721, where it is held that an automobile approaching a railroad crossing at such a rate of speed that it would not be stopped before running into the side of a locomotive is contributory negligence.
“The Plaintiff brought two recent decisions to the attention of the Court: Seaboard Coast Line Railroad Company v. Scudder, Fla.App.1968; 215 So.2d 760, and Jones v. Florida East Coast Railway Company, Fla.App.1969, 220 So. 2d 922. Counsel has furnished the Court with briefs in both of these cases as well as the Court file including photographs in the Scudder case. This Court does not take issue with the principles enunciated in either of those cases but finds that they are not controlling with respect to the factual issue now before the Court. The approach to the crossing in the Scudder case dif *212 fers considerably from the present factual situation along with the fact that there were flat cars parked on a siding which represented an obstruction and also their presence could have mislead the Plaintiff. Furthermore there is no showing that the Plaintiff in the Scudder case was familiar with the crossing. The Jones case is principally concerned with the failure of the Court to allow into evidence an ordinance requiring flashing signals at the crossing in question. It is also an appeal from a jury verdict for the Defendant.
“Considering the undisputed facts, this Court finds, as a matter of law, that the Plaintiff failed to take such precautions which would be required of a reasonably careful person under like circumstances. With full knowledge of the existence of the tracks and familiarity with the crossing, he obviously failed to have his vehicle under control so as to avert collision when such was possible. He failed to assume his positive duty to care for his own safety.
“As a result of the foregoing, it is
“ORDERED and ADJUDGED that the Defendants’ motion for directed verdict be and the same is hereby granted; that Plaintiff take nothing by this action, and that Defendants go hence without day and recover their costs which will be taxed hereafter; and, that Judgment be and the same is hereby granted in favor of the Defendants notwithstanding the verdict of the jury.”
We find that the decision below is in conflict with recent controlling decisions and must be quashed.
In Stirling v. Sapp, Fla., 229 So.2d 850, we said a motion for judgment notwithstanding the verdict should be granted only if there is no evidence or reasonable inference to support the opposing position; that a jury must determine what is or is not negligence in a particular case if there are conflicts in the testimony or if the facts are such that reasonable persons may fairly arrive at different conclusions.
In Stirling we quoted from Nelson v. Ziegler, Fla., 89 So.2d 780, to the effect the circuit judge there stated his conclusion of law that the evidence “ ‘ “shows both parties to be guilty of negligence and under that neither one can recover.” ’ ” This Court disagreed, stating,
“ * * The correct rule applicable to the defense of contributory negligence is that only in those cases where negligence of a plaintiff proximately contributes to the cause of his own injury and damage will such negligence bar recovery. A plaintiff can be guilty of some negligence but unless it is negligence that proximately contributed to causing the injury, then the negligence of the defendant, if established, remains the proximate cause. * * * (Emphasis supplied.)
* * * * * *
“ We do hold that on the basis of the record now before us the questions were for determination by the jury rather than by the trial judge. * * (Stirling v. Sapp, supra, 229 So.2d 853, 854.)
See also: Parsons v. Reyes, Fla., 238 So. 2d 561; Atlantic Coast Line Railroad Company v. Turpak, Fla.App., 225 So.2d 340; Conda v. Plain, Fla., 222 So.2d 417; Buck v. Lopez, Fla., 250 So.2d 6, Opinion filed June 16, 1971.
As we view this case, the trial judge in granting the judgment n. o. v. rested his decision too heavily on the following considerations set forth in his order:
“The Plaintiff was familiar with the crossing having gone over the crossing some ten or fifteen times within the six months preceding the accident. In addition, the Plaintiff had gone over the crossing just a few hours before the accident and on the same day as the accident. * * *
*213 * * * * * *
“* * * With full knowledge of the existence of the tracks and familiarity with the crossing, he obviously failed to have his vehicle under control so as to avert collision when such was possible. * * * ”
It appears to us the trial judge overlooked the reciprocal rights and duties of motorists and railroads. See Atlantic Coastline Railroad Co. v. Timmins, 1948, 160 Fla. 754, 36 So.2d 430, and St. Louis-San Francisco Ry. Co. v. Earl, Fla.1950, 49 So.2d 324. See also, Draiss v. Payne, 158 La. 652, 104 So. 487. On this point it was said in Dombrenos v. Chicago, R. I. & P. Ry. Co., 194 Iowa 1161, 191 N.W. 158, at 165:
“* * * if we proclaim the rule that every driver approaching a crossing must stop his car or have it under such control that he can stop it in time to avoid a collision at the peril of being held negligent as a matter of law without consideration of the [particular] circumstances * * * he will thereby be compelled to become his own in-suror in every case of collision without regard to the company’s negligence.
If the trial court’s conclusions herein were agreed to by us, they would in effect become controlling precedents automatically resulting in Florida motorists being deemed as a matter of law guilty of negligence, proximately contributing to the cause of their injuries when sustained in train-automobile collisions if they were familiar with the crossings where the collisions occurred, without regard to the railroad’s negligence respecting its reciprocal responsibilities to motorists. These conclusions of the trial judge appear contrary to the cases cited above.
The Petitioner-plaintiff points out to us a number of things in the evidence indicating this was a jury case and not a judge case for determining whether plaintiff’s negligence proximately contributed to the cause of his injury. One was that the train was going 40 miles per hour in a 20 miles per hour zone, twice the speed limit. An independent witness said the train did not blow its whistle on its approach to the crossing and the plaintiff testified the train’s whistle did not blow. Plaintiff was traveling in his car at the same speed as other traffic, which he estimated to be at approximately 40 miles per hour. Plaintiff gave evidence tending to contradict the defendants’ evidence that the clear distance between the track and obstructing trees was 221 feet. He said he put on his brakes immediately upon coming from behind the trees, seeing the train was approaching the crossing, although it had not blown its whistle; that as soon as he saw the train and put on his brakes he skidded 107 feet. The jury could have believed the distance was 107 feet plus reaction time. On this point the train engineer testified he put on the train’s emergency brake but was unable to testify whether plaintiff was 75 feet away from the crossing when he (the engineer) applied the brake.
The accident occurred at the railroad crossing over Himes Avenue in the City of Tampa. No flashing light signals, only “cross-buck” signs were provided at the crossing in this urban area by the railroad pursuant to F.S. Section 351.03, F. S.A.
Since there was testimony the plaintiff’s automobile was going at approximately 40 miles per hour and the train the same, and the plaintiff had the right to assume the train was going 20 miles per hour according to the train speed limit of the city ordinance, the jury could have believed that when the plaintiff had seen and realized that the train was going twice as fast as it should, it was then too late for him to stop his car or cross over the track without injury and that consequently plaintiff’s negligence did not proximately contribute to the cause of his injury.
*214 In all candor, these factual considerations or any of them submitted in the evidence by plaintiff might have been disbelieved by the jury because of the physical situation at the crossing and the countervailing evidence given by the defendant. But it was the jury’s province and not the trial judge’s duty to resolve these disputed matters of evidence in the case to the point of determining whether plaintiff’s negligence proximately contributed to the cause of his injury.
The trial judge, to the exclusion of jury consideration, determined that plaintiff’s familiarity with the crossing alone absolved the railroad of any reciprocal
duty to plaintiff to observe the 20 miles speed limit and blow the train whistle. We believe resolution of these disputed matters relating to negligence in failing to observe reciprocal duties, including the issue of proximate negligence and plaintiff’s contribution thereto belonged to the jury. Stirling v. Sapp, supra.
The decision below is quashed with direction that the verdict of the jury be reinstated with appropriate judgment entered thereon.
It is so ordered.
ROBERTS, C. J., and CARLTON, ADKINS and McCAIN, JJ., concur.