512 So.2d 276 (1987)
Terri Eckerson ANDREWS and International Minerals and Chemical Corporation, Appellants,
v.
Kimberly M. TEW, a Minor By and Through her Mother and best friend, Nancy Tew, and Nancy Tew and Michael Tew, Individually, Appellees.
No. 86-1367.
District Court of Appeal of Florida, Second District.
September 4, 1987.
*277 Steven L. Brannock and Fred J. Lotterhos of Holland & Knight, Tampa, for appellants.
James T. Butler and Kenneth E. Apgar of Butler & Apgar, P.A., and E.C. Watkins, Jr., Tampa, for appellees.
THREADGILL, Judge.
This is an appeal of the trial court's order granting appellees, the Tews, a new trial. We reverse.
The Tews filed a suit against appellants for personal injuries received by eight year old Kimberly Tew (Kimberly) when she allegedly darted out in front of a vehicle driven by appellant Terri Eckerson Andrews (Andrews) and owned by International Minerals and Chemical Corporation (IMC). IMC's status is not an issue in this appeal. The jury returned a verdict for Andrews and IMC. The Tews filed a motion for a new trial. The trial court granted a new trial on the grounds that the verdict was against the manifest weight of the evidence. After this appeal was filed, this court relinquished jurisdiction to permit the trial court to state its reasons as to why the verdict was contrary to the manifest weight of the evidence. The reasons given by the trial court are as follows:
1. Appellant driver's approach to the accident location was unobstructed and she saw two objects on one edge of the two-lane roadway and one object on the other edge of the roadway three quarters of a mile to a mile before impact. She did not reduce her speed until about 50 yards before impact.
2. Appellant driver knew that the three objects were children about fifty yards before impact. At that point Appellant driver began to reduce her speed from 45 MPH by taking her foot off the accelerator. There was no traffic directly behind her or coming toward her.
3. Appellant driver did not brake her vehicle until one of the children went into the roadway.
4. Having heard and observed the testimony given, considered the Court's instructions to the jury on the different standards of care involved, the Court finds that the manifest weight of the evidence showed that some degree of negligence on the part of Appellant driver caused the collision of the motor vehicle she was driving with the minor plaintiff.
5. The testimony of the defense expert witness, William H. Skelton, Jr., contributed to the jury being deceived by the force and effect of the evidence presented and either caused or contributed to the jury rendering a verdict that was *278 against the manifest weight of all of the evidence.
On appeal Andrews contends that the trial court erred in granting a new trial. We agree and reverse the trial court's order.
The facts of this case are not in dispute. In March 1984, Kimberly and two young girlfriends, Cissy and Angela, were walking along State Road 640 to a Shop N' Go. The children walked on the right side of the highway a certain distance before Cissy and Angela crossed the highway and continued walking on the other side. Kimberly remained on the opposite side of the highway.
Before the accident Andrews was driving westbound on the highway, traveling at the posted speed limit of 55 m.p.h. Approximately three-quarters of a mile from the girls, she observed "objects" on each side of the road, but could not at that distance tell they were children. When she was about 300 feet from them, she noticed that they were children walking, with their backs to her, in the same direction she was traveling. Andrews immediately took her foot off the accelerator and prepared to apply the brakes. She saw no traffic in either direction and moved toward the center of the road. During this time she noticed her speed to be 45 m.p.h. and dropping. Andrews stayed in the center of the road, coasting with her hands on the steering wheel and her foot over the brake. Kimberly, without warning, darted out in front of Andrews' car. Andrews immediately slammed on the brakes, but was unable to stop in time to avoid the accident. Andrews testified she was alert and in control of her car at all times. She had not been drinking, nor using drugs. There was no evidence that her car had any mechanical problems.
William Skelton, an accident reconstruction expert, testified for Andrews. Using a photograph identified by Andrews showing her skid marks to locate the accident scene, he visited the scene almost two years after the accident and just before testifying at trial. He measured the skid marks and testified that the car was going a minimum of 28.2 m.p.h. at the time the skid marks began. He testified he did not see "shadow marks." The Tews' counsel objected to this testimony arguing that the expert's estimate of speed did not take into account "shadow marks" which had long since faded. Trooper Meier, the Tews' witness, explained that "shadow marks" are lighter skid marks which precede the dark ones. They are created when, as a car begins to skid, the tires lay down a little rubber until heat from the friction between the tire and the road builds up to a point sufficient to melt the rubber. Because these shadow marks had disappeared, the Tews argued that Andrews' expert could not calculate the exact speed of the car at the time Kimberly darted in front of Andrews' car. The court overruled the objection determining that the objection went to the reliability and credibility of the opinion and not to its admissibility. The Tews' counsel was permitted to cross-examine the witness about the shadow marks.
After the jury verdict in favor of Andrews, the Tews moved for a new trial, arguing again that the expert's testimony was inadmissible because it was based on a faulty predicate and that it deceived the jury about the force and credibility of the evidence. Based on the reasons stated above, the trial court granted a new trial.
An appellate court must test the appropriateness of a trial court's granting of a new trial by applying the abuse of discretion standard. Ford Motor Co. v. Kikis, 401 So.2d 1341 (Fla. 1981). A reviewing court will not find abuse of discretion if it finds that reasonable men could differ as to the propriety of the trial court's granting of a new trial. Id. Here, the trial court granted a new trial on the grounds that the verdict was against the manifest weight of the evidence. A trial court's order must give reasons supporting such a finding. Crown Cork & Seal Co., Inc. v. Vroom, 480 So.2d 108 (Fla. 2d DCA 1985). A verdict is against the manifest weight of the evidence only when it is clear, obvious, and indisputable that the jury was wrong. Crown Cork, 480 So.2d at 110; Kashino v. Morell, 449 So.2d 958 (Fla. 4th DCA 1984).
*279 In deciding whether the trial court abused its discretion, we must first determine whether the verdict was indeed against the manifest weight of the evidence. At the outset, we note that the new trial order understates the evidence and misstates one critical fact. It is undisputed that Andrews began to slow down 300 feet (100 yards) before she reached the children, not fifty yards as stated in the order. Therefore, the record does not support the court's finding that Andrews did not reduce her speed until fifty yards away. It was also undisputed that she straddled the center line in an effort to stay as far away from the children on either side of the road, that she was prepared to brake and that Kimberly darted out in front of her without warning. The Tews offered no evidence to dispute these facts. At trial the Tews argued that Andrews should have reduced her speed further; Andrews argued that she acted with due care. The jury believed Andrews.
In applying the manifest weight of the evidence standard, we cannot say that it is clear, obvious, and indisputable that the jury was wrong. Thus, we conclude that the judge's finding that the verdict was against the manifest weight of the evidence was based solely on his disagreement with the jury's determination on liability. Our sister courts have held that judicial reweighing of the evidence constitutes an abuse of discretion. See Crown Cork; McIntosh v. Flagler Title Co., 483 So.2d 50 (Fla. 4th DCA 1986); Eley v. Moris, 478 So.2d 1100 (Fla. 3d DCA 1985). Accordingly, we find that the trial court's finding that the verdict was against the manifest weight of the evidence was error, and was an abuse of the court's discretion.
The admission of the testimony of Andrews' accident reconstruction expert does not support the granting of a new trial. The Tews' attack on the testimony was based on the fact that the estimated speed at the time the skid marks were made confused the jury as to the speed of the car when Kimberly first darted out. Based on the evidence in this case, it would be impossible to determine the exact speed the car was traveling when Kimberly darted out. Indeed, in most skid mark cases, it is not possible to calculate with precision the speed at which a vehicle was traveling just prior to impact. Yet, courts have commonly utilized skid mark testimony to assist the trier of fact. See Kerr v. Caraway, 78 So.2d 571 (Fla. 1955); Quinn v. Millard, 358 So.2d 1378 (Fla. 3d DCA 1978); Taylor v. Posey, 283 So.2d 118 (Fla. 1st DCA 1973), cert. denied, 289 So.2d 9 (Fla. 1974). In Taylor, on similar facts, an expert was called to testify as to the speed of the car at the time it laid down the skid marks. The court held that there was a proper predicate for the expert opinion and ruled that any questions regarding the weight to be given to the testimony was for the jury. Therefore, we conclude that the trial court was correct in ruling that the testimony was admissible over the Tews' objections.
Furthermore, an expert should be permitted to testify whenever his specialized knowledge will assist the trier of fact in understanding the evidence. § 90.701, Florida Statutes (1985). Here, the expert's testimony that the car was going approximately 28 M.P.H. at the time the skid marks began, corroborated Andrews' testimony that she had been slowing down just prior to the impact. The Tews' counsel was given an opportunity to fully cross-examine the expert witness and, in fact, pointed out the alleged deficiencies in calculating the speed of the car at the time Kimberly ran out in front of the car. The jury was aware of these deficiencies and thus the expert's testimony assisted the jury to the extent that it corroborated Andrews' testimony.
Even if admission of the expert's testimony was error, the error was harmless. Where an expert's testimony is merely cumulative of other testimony as to speed, reversal is not required. Delta Rent-A-Car, Inc. v. Rihl, 218 So.2d 469 (Fla. 4th DCA), cert. denied, 225 So.2d 535 (Fla. 1969). In this case, the expert's opinion corroborated Andrews' testimony. Because there was no evidence to the contrary, the expert's testimony was cumulative *280 and therefore its admission was not reversible error.
Based on the foregoing, we find abuse of discretion and reverse the trial court's order granting a new trial.
Reversed.
SCHEB, A.C.J., and CAMPBELL[*], J., concur.
NOTES
[*] Judge Campbell participated in the decision but did not participate in the oral argument.